UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MILPITAS MOBILE HOME ESTATES, DBA FRIENDLY VILLAGE MOBILE HOME ESTATES,<br><br>    Petitioner,<br><br>v.<br><br>THE CITY OF MILPITAS, THE CITY OF MILPITAS CITY COUNCIL, AND THE MOBILE HOME PARK RENTAL REVIEW BOARD,<br><br>    Respondents. | Case No.: 5:12-CV-03386-EJD<br><br>**ORDER GRANTING RESPONDENTS' MOTION TO DISMISS**<br><br>[Re: Docket No. 16] |

Presently before the court is Respondents City of Milpitas ("the City"), Milpitas City Council, and Milpitas Mobile Home Park Rental Review Board's (collectively, "Respondents") Motion to Dismiss Petitioner Milpitas Mobile Home Estates' ("the Parkowner") Petition for Writ of Administrative Mandate ("Pet.") (Dkt. No. 1). Dkt. No. 16. The court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and previously vacated the hearing. Having fully reviewed the parties' briefing, and for the following reasons, the court GRANTS Respondents' Motion.

**I.      Background**

    **a.    Factual Background**

The Parkowner is a California limited partnership that owns and operates Friendly Village Mobile Home Estates ("Friendly Village"). Pet. ¶¶ 4–5, Dkt. No. 1. Friendly Village is a 196-space mobile home park located in Milpitas, California. Id. at ¶ 5. Friendly Village was first acquired in

1

1975 by the Parkowner's primary investor, Mr. Ralph Tingle. Id. at ¶ 12. At that time, the City had no rent control and Mr. Tingle expected Friendly Village would be free to charge rent at the market rate. Id. He similarly expected that the property's value would appreciate over time accordingly. Id. The Parkowner never made any agreement with the City to run Friendly Village as a residence for low-income individuals. Id.

The City adopted rent control in 1992 when it passed the "Mobile Home Park Rent Increases" ordinance ("the Ordinance"). Id. at 13; Request for Judicial Notice ("Req. Judicial Notice") Ex. A, Dkt. Nos. 16-6, 16-7.[1] Explaining the "unique position" of mobile home owners as individuals on whom rent increases fall "with particular harshness," the Ordinance limits how often and by how much the rent for a mobile home may be increased each year. RJN Ex. A at 4 (Milpitas, Cal., Code of Ordinances tit. III, ch. 30, § 1.01); RJN Ex. A at 6. Under the Ordinance, rent increases beyond the permitted amount are subject to the City's review. RJN Ex. A at 6. As the owner and operator of a mobile home park, the Parkowner has been subject to the Ordinance's requirements since its adoption.

Rent at Friendly Village is $603 or less per month. See Dkt. No. 1, at ¶ 13. The Parkowner alleges that the market rate is actually $875 per month, significantly higher than the rent that is charged. Id. This discrepancy, according to the Parkowner, caused it a loss of at least $639,744 in income per year as well as a drop in Friendly Village's value of at least $8 million. Id. at ¶¶ 21, 39. The Parkowner attributes this loss solely to the City's current rent control. Id. at ¶ 13.

### b. Procedural Background

On June 29, 2011, the Parkowner notified all tenants at Friendly Village of its plans to seek approval for a rent increase to $875 per month. See Dkt. No. 1, at ¶ 14. The proposed increase would take effect the following October. Id. In response to the proposal, the Parkowner alleges, the City engaged in "retaliatory conduct," collecting complaints from Friendly Village tenants, "misrepresenting the facts" about Friendly Village's condition, and indicating that the Parkowner is a "'slum lord.'" Id. at ¶ 15.

---

[1] The court hereby GRANTS Respondents' Request for Judicial Notice, Dkt. No. 16-6. See Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001) ("[U]nder Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record'" when ruling on a motion to dismiss.).

2

Case No.: 5:12-CV-03386-EJD
ORDER GRANTING RESPONDENTS' MOTION TO DISMISS

The Milpitas Rent Review Board held a hearing on January 19, 2012 to consider the Parkowner's proposal. See Dkt. No. 1, at ¶ 16. On January 27, 2012, the Review Board ruled against the proposed increase. Id. at ¶ 34. On February 6, 2012, the Parkowner appealed the Review Board's order to the City Council. Id. at ¶ 35. The City Council held a hearing on the matter on March 20, 2012 and affirmed the Review Board's decision. Id. at ¶ 36.

On June 28, 2012, the Parkowner filed two petitions seeking review of the City Council's decision: one in this court and one in the Santa Clara County Superior Court. Dkt. No. 1; RJN Ex. B. To the best of the court's knowledge, the state court action is still pending. The Petition filed in this court contains an amalgamation of claims—constitutional, statutory, and state law—all of them under the heading "First Cause of Action." Dkt. No. 1, at ¶ 47. Specifically, the Parkowner appears to allege several Takings and Fourteenth Amendment claims, each arising under 42 U.S.C. § 1983, as well as a claim under California Code of Civil Procedure § 1094.5 alleging that the hearing was "unfair." Id. at ¶¶ 1, 15 55, 58, 61, 63.

On December 3, 2012, Respondents filed the instant Motion to Dismiss, seeking a dismissal of all claims both for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). See Dkt. No. 16. The court now turns to the substance of that Motion.

**II.     Legal Standard**

Respondents move to dismiss pursuant to both Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. In cases where a defendant moves to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim. Thornhill Puhl'n Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Motions under Rule 12(b)(1) may raise facial and/or factual challenges to the court's jurisdiction. A facial attack occurs when the factual allegations in the complaint are taken as true. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9t h Cir. 1996). The court must construe the facts in the light most favorable to the plaintiff when considering a facial challenge. In contrast, a factual challenge arises when the defendant challenges the lack of jurisdiction with affidavits or other evidence. Under such circumstances, the

3

1  plaintiff is not entitled to any presumption of truthfulness of the alleged facts in the complaint and
2  instead must present evidence to establish subject matter jurisdiction. Thornhill, 594 F.2d at 733.
3  Here, Respondents present a facial challenge for lack of ripeness. See Chandler v. State Farm Mut.
4  Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010) ("Because standing and ripeness pertain to
5  federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to
6  dismiss.") (citations omitted).

7       A motion to dismiss under Rule 12(b)(6) for failure to state a claim focuses on the adequacy
8  of Plaintiff's factual allegations in the complaint. A complaint must contain "a short and plain
9  statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
10 Initially, a complaint needed only to give "fair notice of what the plaintiff's claim is and the
11 grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). However, the Supreme
12 Court has recently made clear that the pleader must show "more than a sheer possibility that a
13 defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, a complaint
14 must allege enough facts such that, if true, would "raise a reasonable expectation that discovery
15 will" actually evince the violation. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

16      When weighing the complaint's sufficiency at this stage, courts generally assume that each
17 allegation is true. But courts "are not bound to accept as true a legal conclusion couched as a
18 factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). That is, the
19 complaint's conclusion—the part alleging which laws were broken—must, in light of the alleged
20 facts, be "plausible on its face." 550 U.S. at 570. The conclusion is considered "plausible" when
21 the alleged facts allow courts to "draw the reasonable inference that the defendant is liable for the
22 misconduct alleged." 355 U.S. at 557, 663. In short, the complaint must be far more than merely
23 "speculative." 550 U.S. at 555.

24 **III.  Discussion**

25      As an initial matter, the court notes that the Parkowner has not met the pleading standard
26 required by Federal Rule of Civil Procedure 8 because it fails to present its claims in any
27 meaningful way. The "first cause of action" contains what appears to be at least five separate
28 causes of action based on several constitutional and statutory provisions. The lack of clarity on the

4

contours of the Parkowner's claims alone is sufficient grounds on which to grant Respondents' Motion to Dismiss. However, because the court finds that several of the Parkowner's purported claims should be dismissed without leave to amend, the court addresses each of the claims in turn.

### a. Facial Challenges to the Ordinance

To the extent that the Parkowner seeks to facially challenge the City's Ordinance, its claim must be dismissed because it is barred by the statute of limitations. "California's statute of limitations for personal injury actions governs claims brought pursuant to 42 U.S.C. § 1983." Colony Cove Prop., LLC v. City of Carson, 640 F.3d 948, 956 (9th Cir. 2011). In cases considering ordinances like the one at issue here, the statute of limitations is two years, beginning to run upon adoption of the ordinance. Id.; Cal. Code Civ. Proc. § 335.1. In this case, the City adopted its Ordinance in 1992 and amended portions of it in 2006, but the Parkowner did not file this lawsuit until 2012—more than five years past the amendment and nearly twenty years past the original adoption of the Ordinance. As such, the court finds that the statute of limitations bars the Parkowner's facial challenges to the Ordinance and GRANTS Respondents' Motion to Dismiss as to that claim WITHOUT LEAVE TO AMEND.

### b. Fifth Amendment Takings

The Bill of Rights contains a guarantee that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Known as the Takings Clause, this provision establishes two constraints on the government's ability to take over a property owner's land. First, it requires the government to compensate the owner for the takeover by the land's market value. United States v. Miller, 317 U.S. 369, 373–74 (1943). Second, the government must take the land for a public purpose. Kelo v. City of New London, 545 U.S. 469, 478–80 (2005). If the government's purpose of the taking is strictly private, i.e. a transfer of property from one private party to another, then no amount of compensation will suffice to remedy the constitutional violation. Thompson v. Consolidated Gas Util. Corp., 300 U.S. 55, 80 (1937) ("[O]ne person's property may not be taken for the benefit of another private person without a justifying public purpose, even though compensation be paid."). The Takings Clause also protects individuals from regulatory takings, i.e. from regulation that is "so onerous that its effect is tantamount to a direct

5

appropriation or ouster," provided that the regulation has no valid public purpose. Lingle v. Chevron U.S.A. Inc., 544 US. 528, 537 (2005). Here, the Parkowner alleges that the Ordinance as applied to it amounts to both a private and a regulatory taking. Dkt. No. 1, at ¶ 40.

### i. Private Taking

The Parkowner appears to claim that the City has enforced the Ordinance against it in a manner that amounts to a private taking. Particularly, the Parkowner asserts that the Ordinance does not satisfy the "public use" requirement of the Takings Clause because its stated public purpose is merely pretext. Dkt. No. 1, at ¶ 40; Pet'r's Opp'n 13, Dkt. No. 17. In turn, Respondents argue that any such private taking claim must be dismissed because, as a matter of law, mobile home rent control fulfills a valid public purpose and thus meets the Fifth Amendment's "public use" requirement. Dkt. No. 16 at 9.

Generally, a taking will be considered constitutional so long as it is "rationally related to a conceivable public purpose." Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 241 (1984). However, a taking does not satisfy the "public use" clause if it is made "for the purpose of conferring a private benefit on a particular private party" or if it is made "under the mere pretext of public purpose, when its actual purpose [is] to bestow a private benefit." Kelo, 545 U.S. at 477-78. Both the Supreme Court and the Ninth Circuit have consistently held that mobile home rent control ordinances are rationally related to legitimate governmental purposes, in satisfaction of the Public Use Clause. See Pennell v. San Jose, 485 U.S. 1, 13 (1988); Guggenheim v. City of Goleta, 638 F.3d 1111, 1123 n. 52 (9th Cir. 2010); Equity Lifestyle Props., Inc. v. County of San Luis Obispo, 548 F.3d 1184, 1194 (9th Cir. 2008); Action Apt. Ass'n v. Santa Monica Rent Control Op. Bd., 509 F.3d 1020, 1024 (9th Cir. 2007).

In 2007, the Ninth Circuit rejected a similar claim to the Parkowner's. See Action Apt. Ass'n, 509 F.3d at 1024. In Action Apt. Ass'n, an association of landlords challenged the constitutionality of the defendant city's rent control ordinance amendments, particularly focusing on the Taking Clause's "public use" requirement. The city had enacted the ordinance to address rapidly rising rents and housing shortages and amended the ordinance more than twenty years later to make it harder for landlords to evict their tenants. See id. at 1022. In evaluating whether the

1   ordinance's amendments satisfied the Public Use Clause, the Ninth Circuit reiterated its prior

2   findings that "[c]ontrolling rents to a reasonable level and limiting evictions substantially alleviate

3   hardships to Santa Monica tenants" and "that rent control may unduly disadvantage others, or that

4   it may exert adverse longterm effects on the housing market, are matters of political argument and

5   resolution; they do not affect the constitutionality of the Rent Control Law." 509 F.3d at 1024

6   (citations omitted). Considering this precedent, the court found that the ordinance's amendments

7   served a valid public purpose. Id.

8   Here, the Ordinance's stated purposes include, inter alia: (1) resolving the "occasionally

9   divisive and harmful impasse between park owners and mobile home owners;" (2) preserving

10  existing housing stock; (3) protecting affordable housing and assisting in providing housing for low

11  and very low income households; and (4) producing "stability in rent increases for mobile home

12  park tenants while recognizing the rights of mobile home park owners to receive a just and

13  reasonable return." These purposes mirror those the Ninth Circuit found acceptable in Action Apt.

14  Ass'n. See 509 F.3d at 1022. Thus, the court finds that the Ordinance serves a legitimate public

15  purpose.

16  The Parkowner's reliance on Armendariz v. Penman, 75 F.3d 1311, 1313 (9th Cir. 1996),

17  99 Cents Only Stores v. Lancaster Redev. Agency, 237 F. Supp. 2d 1123 (C.D. Cal. 2001), and

18  Cottonwood Christian Center v. Cypress Redev. Agency, 218 F. Supp. 2d 1203 (C.D. Cal. 2002) to

19  suggest pretext is misplaced. In each of these cases, the plaintiffs pointed to a specific private party

20  whom the respective defendant cities sought to benefit through their actions. These allegations

21  supported the plausibility of the plaintiffs' arguments that the defendants' actions were pretextual.

22  In Armendariz, the defendant city had conducted a series of housing code enforcement sweeps

23  supposedly to reduce "urban blight." 75 F.3d at 1314. However, the plaintiffs alleged that the

24  actual purpose of this sweep was to deprive plaintiffs of their property so a commercial shopping

25  center developer could acquire it cheaply. Id. In 99 Cents Only Stores, the court found on summary

26  judgment that the defendant city condemned the plaintiff's lease to "appease Costco," which had

27  threatened to leave its anchor tenancy. 237 F. Supp. 2d at 1129. Likewise in Cottonwood, the

28  plaintiff church alleged that the city denied it a permit to build on its own land and initiated

7
Case No.: 5:12-CV-03386-EJD
ORDER GRANTING RESPONDENTS' MOTION TO DISMISS

eminent domain proceedings so that Costco could build a store on the property. 218 F. Supp. at 1229-30. The Parkowner makes no such allegations here. It does not point to any ulterior motive the City could have had in denying its request that could create an inference of pretext. Rather, the Parkowner simply reiterates that the denial of its proposed rent increase does not serve a public purpose. Such allegations and argument are insufficient to persuade the court to find an exception against the weight of authority establishing that ordinances like the one at issue here satisfy a legitimate public purpose.

The Parkowner's remaining arguments that no public purpose is served by Respondents' decision—specifically because (1) the rents are neither excessive nor monopolistic; (2) the city has not inquired into the tenants' ability to pay; and (3) a landlord cannot exploit a tenant unless the rent charged is above market—amount to an efficacy challenge to the Ordinance. Both the Supreme Court and the Ninth Circuit have flatly rejected such challenges. See Kelo, 545 U.S. at 488 (declining to "second-guess the City's considered judgment about the efficacy of its" regulation); Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 544 (2005) (holding that a "means-end" test, while possibly useful in analyzing a due process claim, is not a valid method of determining a private takings claims); Guggenheim, 638 F.3d at 1123 ("Whether the City of Goleta's economic theory for rent control is sound or not, and whether rent control will serve the purposes stated in the ordinance of protecting tenants from housing shortages and abusively high rents or will undermine those purposes, is not for us to decide. We are a court, not a tenure committee, and are bound by precedent establishing that such laws do have a rational basis."). In keeping with this authority, the court declines to find that the Parkowner's efficacy arguments are sufficient to show that the Ordinance does not serve a valid public purpose.

Having found that the Ordinance satisfies the Public Use Clause, the court DISMISSES the private takings claim WITH LEAVE TO AMEND.

### ii. Regulatory Taking

Respondents move to dismiss the Parkowner's apparent regulatory takings claim on the basis that any such claim is unripe because the Parkowner has not yet been denied just compensation. In a state that "provides an adequate procedure for seeking just compensation," a

petitioner making a just compensation claim must use that state procedure before turning to federal court. Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195 (1985). In California, that procedure, known as a "Kavanau adjustment," requires the petitioner to file a writ of mandamus in state court, and if the writ is granted, seek an adjustment of future rents from the local rent control board, before petitioning the federal district court. See Kavanau v. Santa Monica Rent Control Bd., 16 Cal. 4th 761, 783-84 (1997). The Ninth Circuit has found that the Kavanau adjustment constitutes "an adequate procedure for seeking just compensation, [and] the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Equity Lifestyle, 548 F.3d 1184, 1192 (9th Cir. 2008).

Here, the parties do not dispute that the Parkowner's state court proceedings have not yet been resolved. As such, the Parkowner clearly has not yet been denied just compensation to the satisfaction of Williamson. Despite this plain deficiency in its regulatory claim, the Parkowner contends that its claims are in fact ripe because pursuing the Kavanau adjustment would be futile and because the court has the discretion to waive the Williamson exhaustion requirements. Neither of these arguments is compelling.

First, the Parkowner contends that the Kavanau adjustment proceedings would be futile, and thus that it should not be held to Williamson's requirements. Though the Parkowner is correct in pointing out that Williamson's exhaustion requirement does not apply if a federal court determines that proceeding in state court would be futile, that exception is exceedingly narrow. Manufactured Home Communities, Inc. v. City of San Jose, 420 F.3d 1022, 1035 (9th Cir. 2005). The Parkowner does not explain how this standard rent control case warrants such an exception. The Ninth Circuit has repeatedly held that the Kavanau adjustment process provides an adequate procedure for seeking just compensation. See Colony Cove, 640 F.3d at 958; Equity Lifestyle, 548 F.3d at 1192. Thus, requiring the Parkowner to follow the Kavanau procedure would not, under nearly any set of circumstances, be futile. The Parkowner's citation to another case litigated by its counsel, Besaro Mobile Home Park v. City of Fremont, 204 Cal. App. 4th 345 (Cal. Ct. App. 2004), is, at best, irrelevant to the futility argument. In Besaro, the court found that the plaintiff

9
Case No.: 5:12-CV-03386-EJD
ORDER GRANTING RESPONDENTS' MOTION TO DISMISS

parkowner's admission that "it was currently receiving a fair return on investment" precluded its regulatory takings claim because the plaintiff necessarily admitted that the regulation at issue did not have "a confiscatory effect." 204 Cal. App. 4th at 359. That decision did not consider <u>Williamson</u>'s exhaustion requirement, nor did it discuss the futility of pursuing the <u>Kavanau</u> procedure. In fact, the Ninth Circuit later affirmed that the parkowner in that case must comply with <u>Williamson</u>. <u>Besaro Mobile Home Park, LLC v. City of Fremont</u>, 289 Fed. App'x 232, 233-34 (9th Cir. 2008). Having failed to provide any relevant argument on futility, the Parkowner has simply not met its burden of establishing that the <u>Kavanau</u> procedure would be futile.

      Similarly, the Parkowner's argument that <u>Williamson</u>'s exhaustion requirements are "prudential," and may be waived by federal courts, is unpersuasive. The two Ninth Circuit cases on which the Parkowner relies—<u>Adam Bros. Farming Inc. v. County of Santa Barbara</u>, 604 F.3d 1142, 1148 (9th Cir. 2010) and <u>Guggenheim</u>—are not relevant to the instant matter. The ripeness question before the <u>Adam Bros.</u> court was whether a plaintiff who had already sought relief in state court on certain federal grounds could be said to have exhausted its remedies as to a separate state law ground which it did not raise during the state court proceedings. The court declined to answer that question, instead finding that the doctrine of res judicata precluded the plaintiff's claims. In <u>Guggenheim</u>, the parties had previously litigated and settled in state court, and so the Ninth Circuit assumed without deciding that the claim was ripe. While the <u>Guggenheim</u> court did address <u>Williamson</u>'s prudential concerns, it did so by reiterating that <u>Williamson</u> clearly applied to as-applied regulatory challenges but that the state of the law was unclear as to the exhaustion requirements for facial challenges to regulations. <u>See</u> <u>id.</u> at 1117. Here, the court has already dismissed without leave to amend any facial challenge to the Ordinance because the statute of limitations has run. Thus, the Parkowner's only remaining regulatory claim is an as-applied challenge. As such, even under the authority the Parkowner cites, <u>Williamson</u>'s exhaustion requirements clearly apply.

      Having found that the Parkowner's claim is unripe and that neither the futility exception nor waiver is appropriate in this case, the court DISMISSES the Parkowner's regulatory takings claim for lack of subject matter jurisdiction.

### c. Substantive Due Process and Equal Protection

Respondents move to dismiss the Parkowner's substantive due process and equal protection claims on the basis that these claims are subsumed by the Parkowner's Takings Clause cause of action. Generally, "the Fifth Amendment [precludes] a due process challenge only if the alleged conduct is actually covered by the Takings Clause." Crown Point Dev., Inc. v. City of Sun Valley, 506 F.3d 851, 855 (9th Cir. 2007). In the context of mobile home rent control, the Ninth Circuit has explained that additional constitutional claims will be subsumed under a Takings Clause claim when the property owner challenges the ordinance on the ground that the ordinance's application to the property owner denies it a fair return on its investment. Colony Cove, 640 F.3d at 960. Here, the Parkowner alleges that it is "losing at least $639,744 per year in rental income and has suffered a decrease in the value of its property of at least $8,000,000." Dkt. No. 1 ¶ 55. Though the Parkowner insists it has not made a "fair return on investment" claim, the import of these allegations is that the Ordinance prevents the Parkowner from receiving an adequate return. The court will not depart from settled Ninth Circuit precedent merely because the Parkowner has artfully avoided employing the precise verbal formulation typically used in these cases. Because the Parkowner premises its due process and equal protection claims on its financial losses caused by the Ordinance, the court finds these claims are subsumed by the Takings Clause cause of action.

Even if the court were to find that the Parkowner's substantive due process and equal protection claims could stand apart from its Fifth Amendment claim, it would nonetheless dismiss these claims pursuant to Rule 12(b)(6). The Parkowner provides no factual allegations sufficient to disturb the well-settled understanding that rent control ordinances aimed at protecting mobile home owners from unreasonable rent increases while acknowledging park owners' need to receive a reasonable profit, such as the Ordinance here, are not "arbitrary, irrational, or lacking any reasonable justification in the service of a legitimate government interest." Colony Cove, 640 F.3d at 962; see also Equity Lifestyle, 548 F.3d at 1193-94. Accordingly, the court GRANTS Respondents' Motion to Dismiss as to the substantive due process and equal protection claims WITH LEAVE TO AMEND.

**d. Cal. Code Civ. Proc. § 1094.5**

Having failed to provide any argument in response to Respondents' Motion to Dismiss the Cal. Code Civ. Proc. § 1094.5 cause of action, the Parkowner appears to have conceded this claim. Accordingly the court GRANTS Respondents' Motion to Dismiss as to this claim WITHOUT LEAVE TO AMEND.

**IV. Conclusion**

For the foregoing reasons, the court GRANTS Respondents' Motion to Dismiss. The Parkowner's facial challenges to the Ordinance are barred by the applicable statute of limitations and thus are DISMISSED WITHOUT LEAVE TO AMEND. The Private Taking claim is DISMISSED WITH LEAVE TO AMEND. The Regulatory Taking, Substantive Due Process, and Equal Protection Claims are unripe and thus DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. However, to the extent the Parkowner can allege facts sufficient to set its Substantive Due Process and Equal Protection claims apart from its Takings Clause claims, the court GRANTS the Parkowner LEAVE TO AMEND these claims. The Parkowner has waived its Cal. Code Civ. Proc. § 1094.5 claim; therefore, this claim is DISMISSED WITHOUT LEAVE TO AMEND.

Any amended complaint must be filed within fourteen days of the date of this order. The Parkowner is advised that it may not add new claims or parties without first obtaining Respondents' consent or leave of court pursuant to Federal Rule of Civil Procedure 15. The Parkowner is further advised that failure to amend its petition in a manner consistent with this Order may result in the dismissal of this action.

**IT IS SO ORDERED**

Dated: August 21, 2013

_____
EDWARD J. DAVILA
United States District Judge